UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA W. HORN,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIS US INC., A MANPOWER BRAND COMPANY,<br><br>Defendant. | No. 2:17-cv-0814 JAM DB PS<br><br>ORDER AND<br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff Ella Horn is proceeding in this action pro se. This matter was, therefore, referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the undersigned is defendant Experis US Inc.'s, ("Experis"), motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the undersigned will recommend that defendant's motion for summary judgment be granted in part.

**BACKGROUND**

Plaintiff, proceeding pro se, commenced this action on April 18, 2017, by filing a complaint and a motion to proceed in forma pauperis. (ECF Nos. 1 & 2.) Therein, plaintiff alleges that on May 28, 2015, CRC Health Care, ("CRC Health"), manager Slvie Cosgrove hired

////

1

plaintiff as a project manager.  (Compl (ECF No. 1) at 7.[1])  The position was to become permanent after 90 days.  (Id.)  CRC Health was defendant Experis's "Client."  (Id.)

Thereafter, however, Cosgrove "refused to communicate with plaintiff in any form."  (Id. at 8.)  Plaintiff was also forced to work with Frank Yang, "a CRC Health Care, project manager," "who avoided to train plaintiff," and "referred to plaintiff as a 'dumbass project manager[.]'"  (Id. at 10-11.)  "Approximately, a week and half" after plaintiff was hired, plaintiff contacted Tonya Rosado, defendant Experis's HR Manager, and explained that Cosgrove "was un-responsive and that the training . . . was not occurring and lacking."  (Id. at 12.)

On or about June 12, 2015, plaintiff was traveling on a work related trip in a rental car with Yang.  (Id. at 14-15.)  "[P]laintiff endured unsolicited sexual harassment stares at her breast from Mr. Yang[.]"  (Id. at 15.)  Also, while driving past an Adult Video Book Store, "Yang, turn[ed] to plaintiff while driving and asked, 'what would you say if I stopped at this Adult Video Book Store?'"  (Id.)  "Before plaintiff could compose herself to speak, Mr. Yang said, 'I was just kidding.'"  (Id. at 16.)

"Plaintiff was silent and . . . never said a word on this subject[.]"  (Id.)  On July 2, 2015, "Cosgrove wrongfully terminated plaintiff[']s employment . . . due to her race."  (Id. at 8.)  According to the complaint defendant Experis, created and maintained "a racially hostile work environment" and "retaliated against Plaintiff on the basis of her race and for sexual harassment, resulting in wrongful termination[.]"  (Id. at 7.)  Based on these allegations, the complaint asserts causes of action for racial discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as well as several state law causes of action.  (Id. at 17-21.)

On September 26, 2017, the undersigned issued an order granting plaintiff's motion to proceed in forma pauperis and ordering service of the complaint on the defendant.  (ECF No. 3.)  Defendant filed an answer on December 6, 2017.  (ECF No. 9.)  On November 30, 2018, defendant filed the pending motion for summary judgment.  (ECF No. 24.)  Plaintiff filed an opposition, a sperate statement of disputed and undisputed facts, and a declaration in support of

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

opposition to defendant's motion on December 21, 2018.  (ECF Nos. 28-30.)  On January 18, 2019, defendant filed an amended declaration in support.  (ECF No. 31.)  On January 25, 2019, defendant filed a reply to plaintiff's opposition.  (ECF No. 32.)  The undersigned took defendant's motion for summary judgment under submission on January 28, 2019.  (ECF No. 33.)

On January 29, 2019, plaintiff filed an objection to defendant's amended declaration.  (ECF No. 35.)  And on January 30, 2019, plaintiff filed a motion to strike defendant's reply but did not notice the motion for a hearing.[2]  (ECF No. 37.)  On January 31, 2019, defendant filed a response to plaintiff's objection.  (ECF No. 36.)  On February 11, 2019, defendant filed an opposition to plaintiff's motion to strike.  (ECF No. 38.)

**STANDARDS**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

////

---

[2] Plaintiff's motion argues that defendant's reply should be stricken due to being untimely.  However, defendant's reply was filed on January 25, 2019, seven days prior to the February 1, 2019 noticed hearing.  (ECF Nos. 32-33.)  Defendant's filing was timely pursuant to Local Rule 230(d) and plaintiff's motion to strike will, therefore, be denied.

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the
////

respondent could return a verdict in the respondent's favor.'" <u>Zetwick v. County of Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (quoting <u>Reza v. Pearce</u>, 806 F.3d 497, 505 (9th Cir. 2015)).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." <u>Walls v. Central Costa County Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Defendants' statement of undisputed facts—supported by citation to declarations, exhibits, and transcripts from depositions—asserts in relevant part the following. Defendant Experis is a staffing company. Defendant placed plaintiff in a Project Manager assignment with its client, CRC Health in June of 2015. Sylvie Cosgrove was a manager for CRC Health. Cosgrove was not an employee, supervisor, manager or agent of defendant, nor did she act on behalf of defendant or at defendant's direction. Cosgrove made the decision to hire plaintiff for the position of Project Manager with CRC Health and was responsible for plaintiff's training and daily work activities. (Defs.' SUDF (ECF No. 24-2) 1-7.[3])

On June 12, 2015, plaintiff was riding in a vehicle with Frank Yang. Yang was an employee of Centroid, performing work as a contract Project Manager for CRC Health. Plaintiff alleged Yang sexually harassed plaintiff by looking at plaintiff suggestively and commenting about stopping at an adult book store. Yang was not plaintiff's supervisor nor defendant's employee. (Defs.' SUDF (ECF No. 24-2) 13-18.)

---

[3] Citations here are to defendants' specific numbered undisputed fact asserted.

5

Plaintiff never complained to anyone employed with defendant or CRC Health about Yang's behavior. Plaintiff's employment was eventually terminated by CRC Health. Plaintiff, however, remained eligible to receive employment assignments from defendant. (Defs.' SUDF (ECF No. 24-2) 24-25, 27, 29.)

**PLAINTIFF'S OPPOSITION**

Local Rule 260(b) requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial. Here, plaintiff has complied with Local Rule 260(b). (ECF No. 29.) Moreover, plaintiff's statement of facts attempts to dispute the vast majority of defendant's undisputed facts. Rather than recreating every disputed fact, the undersigned will discuss plaintiff's relevant denials in analyzing defendant's motion for summary judgment below.

**ANALYSIS**

**I.    Title VII**

"Title VII exists in large part 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" Clemens v. Centurylink Inc., 874 F.3d 1113, 1115 (9th Cir. 2017) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)). To this end, "Title VII forbids certain employers from 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Campbell v. Hawaii Department of Education, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)). To these ends, and applicable here, Title VII prohibits the following.

    **A.    Race and Sex Based Discrimination**

To prevail on a disparate treatment claim of race or sex based discrimination, plaintiff "must first establish a prima facie case by showing that: (1) she belongs to a protected class, (2) she was qualified for the position in question, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more

////

favorably."[4] Campbell, 892 F.3d at 1012 (citing Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."). "[W]hen a plaintiff is claiming race and sex bias, it is necessary to determine whether the employer discriminates on the basis of that combination of factors, not just whether it discriminates against people of the same race or of the same sex." Lam v. University of Hawai'i, 40 F.3d 1551, 1562 (9th Cir. 1994).

The only potential adverse employment action at issue here is plaintiff's termination by Cosgrove.[5] And termination is unquestionably an adverse employment action. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). However, the complaint explicitly alleges that it was "Sylvie Cosgrove of CRC Health Care" who "wrongfully terminated plaintiff['s] employment[.]"[6] (Compl. (ECF No. 1) at 13.) And after CRC Health's election to terminate

---

[4] "Liability in a disparate-treatment case depends on whether the protected trait [] actually motivated the employer's decision. By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003). Disparate impact claims focus "on statistical disparities, rather than specific incidents, and on competing explanations for these disparities." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988). The complaint does not allege a disparate impact claim, nor has plaintiff provided any statistical evidence.

[5] Plaintiff's opposition also asserts that defendant discriminated against plaintiff by refusing to pay for plaintiff's rental car while providing "rental cars to none (sic) protected class of persons," by delaying plaintiff's "access to . . . payroll/direct deposit," and by refusing to "support Horn with their Client CRC for training and for lack of communication with Cosgrove[.]" (Pl.'s Opp.'n (ECF No. 28) at 9.) These vague and conclusory allegations, essentially articulated for the first time in plaintiff's opposition, are unsupported by evidence and/or fail to state a claim for discrimination.

[6] Plaintiff filed a prior separate action against CRC Health in the Northern District of California. The court in that action granted CRC Health's motion for summary judgment, finding "[t]he evidence on record does not create a triable issue on Horn's claims that she was subjected to a

plaintiff's employment with CRC Health, plaintiff "remained on Experis's active roster of consultants, and she was eligible to be placed with other Experis clients." (Rosado Decl. (ECF No. 24-4) at 3.)

Plaintiff disputes defendant's argument that CRC Health terminated plaintiff by citing to a portion of Rosado's deposition in which Rosado stated "we terminated her assignment with CRC[.]" (Pl.'s SUDF (ECF No. 29) at 11.) Review of Rosado's complete deposition, however, finds the following exchange:

> Q. Did Experis hire Ms. Horn as an employee? I don't know if it's considered Experis or Manpower, but did one of those entities hire her?
>
> A. Well, we hired her as an hourly consultant, hourly billable, you know, consultant, so she was W-2. So we terminated her assignment with CRC, but she is still eligible to work with Experis on other engagements.
>
> Q. Understood.
>
> A. So ending her assignment with CRC doesn't preclude her from doing work for Experis or one of Experis' clients in the future?
>
> Q. Correct.

(Rosado Dep. 128:20-129:7.)

Plaintiff argues that defendant and CRC Health were "joint" employers. (Pl.'s Opp.'n (ECF No. 28) at 13.) It is true "that an individual can have more than one employer for Title VII purposes." U.S. Equal Employment Opportunity Commission v. Global Horizons, Inc., 915 F.3d 631, 637 (9th Cir. 2019). Ultimately, "the principal guidepost" for determining who is an employer for purposes of Title VII "is the element of control[.]" Id. at 638. When analyzing control, the court looks to:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part

---

workplace made hostile by sexual harassment or terminated because of her race." Horn v. CRC Health Group, Inc., Case No. 17-cv-2192 NC, 2018 WL 3417504, at *11 (N.D. Cal. July 13, 2018).

> of the regular business of the hiring party; whether the hiring party is
> in business; the provision of employee benefits; and the tax treatment
> of the hired party.

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992); see also Vizcaino v. U.S. Dist. Court for Western Dist. of Washington, 173 F.3d 713, 723-24 (9th Cir. 1999) ("workers leased from an employment agency could be the common law employees of the recipient of their services; their status with respect to the latter must be determined using the Darden factors").

Here, Rosado's declaration establishes the following. CRC Health's decision to hire plaintiff was made by CRC Health manager Sylvie Cosgrove. (Rosado Decl. (ECF No. 24-2) at 2.) Plaintiff reported directly to Cosgrove. (Id.) CRC Health dictated plaintiff's day-to-day work activities, work schedule, and assignments. (Id.) Training plaintiff was CRC Health's responsibility. (Id.) And CRC Health had the exclusive right to terminate plaintiff's assignment or to promote plaintiff to a permanent position. (Id.)

Plaintiff also argues that defendant "made no attempt to contact Horn as eligible, for any new job placements after she was wrongfully terminated[.]" (Pl.'s SUDF (ECF No. 29) at 7.) Assuming, arguendo, that is true plaintiff has offered no evidence that other opportunities existed or that such an opportunity went to a similarly situated individual outside of plaintiff's protected class. Plaintiff invites the court "to conclude that Experis's refusal to . . . make an attempt to re-employ Horn, was due to Horn's race," but offers no evidence to support this bare speculation. (Pl.'s Opp.'n (ECF No. 28) at 8.)

Thus, the evidence establishes that CRC Health exercised control over plaintiff's employment with CRC Health.[7] CRC Health unilaterally terminated plaintiff's employment with CRC Health. Plaintiff never made defendant aware of any sexual harassment or race based discrimination. Plaintiff remained eligible to work with defendant. And plaintiff has put forth no evidence that an individual outside plaintiff's protect class was treated more favorably by defendant.

---

[7] In the prior action filed in the Northern District CRC Health did not dispute that it was plaintiff's "employer for Title VII . . . purposes." Horn v. CRC Health Group, Inc., Case No. 17-cv-2192 NC, 2018 WL 3417504, at *1 (N.D. Cal. July 13, 2018).

9

Accordingly, the undersigned finds that plaintiff has failed to demonstrate a prima facie case of race based or sex based discrimination and defendant's motion for summary judgment, therefore, should be granted as to this claim.

**B.    Hostile Work Environment**

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). "A hostile work environment occurs when an employee 1) 'was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[8] Fuller v. Idaho Department of Corrections, 865 F.3d 1154, 1161 (9th Cir. 2017) (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995)). "When evaluating a claim of sexual harassment based on a hostile work environment, we must determine two things: whether the plaintiff has established that she or he was subjected to a hostile work environment, and whether the employer is liable for the harassment that caused the environment." Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).

"Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Clark County School Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (quoting Faragher v. Boca Raton, 524 U.S. 775, 787-788 (1998)). "The working environment must both subjectively and objectively be perceived as abusive." Fuller, 47 F.3d at 1527. "[T]he objective severity of harassment should be judged from the perspective of a

////

---

[8] Although it is possible to assert a hostile work environment claim based on race, plaintiff has put forth no allegations or evidence from which the undersigned could gleam a claim for race based hostile work environment. See Woods v. Graphic Communications, 925 F.2d 1195, 1200 (9th Cir. 1991).

10

reasonable person in the plaintiff's position[.]" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).

Here, plaintiff has alleged a single incident of sexual harassment—the June 2015 car ride with Yang in which Yang allegedly stared at plaintiff's breasts and asked about stopping at an Adult Video Book Store. (Compl. (ECF No. 1) at 15.) A single incident of sexual harassment can support a hostile work environment claim if the incident was "extremely severe." Brooks, 229 F.3d at 926. See generally Little, 301 F.3d at 968 (finding single incident could support hostile work environment claim where "employer effectively condoned a rape by a business colleague"). However, "[s]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788 (citation omitted).

Here, accepting the allegations of plaintiff's complaint as true, the undersigned finds that plaintiff's allegations and evidence concerning Yang's behavior amount to no more than simple teasing, offhand comments, and/or an isolated incident. See Horn v. CRC Health Group, Inc., Case No. 17-cv-2192 NC, 2018 WL 3417504, at *4 (N.D. Cal. July 13, 2018) ("As Horn alleges only this isolated incident giving rise to her sexual harassment claim, the Court finds that her claim lacks both the allegations and evidentiary support to establish a prima facie case and defeat summary judgment."). Compare Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (no hostile work environment where "only a couple of occasions did Manatt's co-workers or supervisor direct their racially insensitive 'humor' at Manatt."); Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); with Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872-73 (9th Cir. 2001) (hostile work environment where male employee was called "faggot" and "fucking female whore" by co-workers and supervisors up to several times per day); Anderson v. Reno, 190 F.3d 930 (9th Cir. 1999) (hostile work environment where a supervisor repeatedly referred to the employee as "office sex goddess," "sexy," and "the good little girl," drew a pair of breasts on an easel while the employee was making a presentation and said "this is

your training bra session," employee received vulgar notes, was patted on the buttocks, and told she was "putting on weight down there"); Draper v. Coeur Rochester, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where supervisor made repeated sexual remarks, told plaintiff of his desire to have sex with her, commented on her appearance, and asked over a loudspeaker if she needed help changing her clothes).

Moreover, Yang was not defendant's employee. (Rosado Decl. (ECF No. 24-4) at 2; Pl.'s SUDF (ECF No. 29) at 4; Yang Depo 21:2-23:14.) "In this circuit, employers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'" Little, 301 F.3d at 968 (quoting Folkerson v. Circus Circus Enters., Inc., 107 F.3d 754, 756 (9th Cir. 1997)). "This theory of liability is grounded not in the harassing act itself—i.e., inmate misconduct—but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Freitag v. Ayers, 468 F.3d 528, 538 (9th Cir. 2006); see also Campbell, 892 F.3d at 1017 ("the DOE may be held liable for the students' harassing conduct only to the extent that it failed reasonably to respond to the conduct or to the extent that it ratified or acquiesced in it").

Here, it is undisputed that plaintiff did not complain to defendant about Yang's alleged staring or Yang's comment about the Adult Video Book Store. (Pl.'s SUDF (ECF No. 29) at 3; Def.'s SUDF (ECF No. 24-2) at 4-5.) Plaintiff's opposition in fact acknowledges that plaintiff "did not tell Experis about the sexual harassment and race discrimination she suffered[.]" (Pl.'s Opp.'n (ECF No. 28) at 6.)

Accordingly, the undersigned finds that defendant's motion for summary judgment should be granted as to plaintiff's hostile work environment claim.

**C.     Retaliation**

Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." Nilsson v. City of Mesa, 503 F.3d 947, 953 (9th Cir. 2007). Under § 704 of the Civil Rights Act of 1964, it is unlawful

////

> for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e–3 (2000). To make out a prima facie case of retaliation under Title VII, a plaintiff must allege facts demonstrating that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003) (quoting Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003)).

Here, there is no evidence that plaintiff engaged in a protected activity or that the defendant subjected plaintiff to an adverse employment action because plaintiff engaged in a protected activity. As noted above, there is no dispute that plaintiff did not complain to defendant about race or sex based discrimination, or Yang's conduct. See Hawkins v. SimplexGrinnell, L.P., 640 Fed. Appx. 640, 642 (9th Cir. 2016) ("Although he complained about various actions by SimplexGrinnell management—the denial of a company truck, denial of training, demotion, and termination—there is no evidence in the record that SimplexGrinnell was on notice that Hawkins was expressing opposition to age-based or disability-based discrimination. Such generalized complaints are not protected activity under FEHA."). Moreover, plaintiff alleges that Cosgrove terminated plaintiff's employment with CRC Health—not because plaintiff engaged in a protected activity—but "due to discovering her race." (Compl. (ECF No. 1) at 13.)

In opposition to defendant's motion for summary judgment, plaintiff argues that "Cosgrove retaliated against [plaintiff] not only due to [plaintiff's race . . . but also due to Horn's rejection of Yang's sexual harassment," as "Yang exercised influence over Cosgrove that encouraged Horn's wrongful termination." (Pl.'s SUDF (ECF No. 29) at 6.) Even assuming arguendo that those allegations are true, those allegations concern the conduct of Cosgrove and Yang, not the defendant. And it is undisputed that plaintiff remained eligible to receive work assignments from defendant even after CRC Health terminated plaintiff. (Def.'s SUDF (ECF No. 24-2) at 5.)

13

1     Accordingly, the undersigned finds that defendant's motion for summary judgment should
2 be granted as to plaintiff's retaliation claim.

**II.     State Law Claims**

    As noted above, in addition to claims brought pursuant to Title VII, plaintiff's complaint asserts a number of state law causes of action. A district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Acri, 114 F.3d at 1001 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)); see also Satey v. JP Morgan Chase & Co., 521 F.3d 1087, 1091 (9th Cir. 2008) (recognizing this principle but noting that dismissal of the remaining state law claims is not mandatory).

    Of course, "primary responsibility for developing and applying state law rests with the state courts." Curiel v. Barclays Capital Real Estate Inc., Civ. No. S-09-3074 FCD KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010). Here, consideration of judicial economy, fairness, convenience, and comity all point toward declining to exercise supplemental jurisdiction. Therefore, the undersigned will also recommend that the assigned District Judge decline to exercise supplemental jurisdiction over the complaint's state law claims.

**CONCLUSION**

    Given the evidence presented by the parties on summary judgment, there does not appear to be even a scintilla of evidence that defendant violated Title VII. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th

Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

In the absence of any evidence of a disputed issue of material fact regarding the claims analyzed above, the undersigned finds that defendant is entitled to summary judgment in its favor on the complaint's claims brought pursuant to Title VII. After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to plaintiff's claims and on which plaintiff would bear the burden of proof at trial.

Accordingly, IT IS HEREBY ORDERED that plaintiff's January 30, 2019 motion to strike (ECF No. 37) is denied.

Also, IT IS HEREBY RECOMMENDED that:

1. Defendant's November 30, 2018 motion for summary judgment (ECF No. 24) be granted as to the complaint's Title VII claims;

2. Judgement be entered for defendant as to the complaint's Title VII claims;

3. The court decline to exercise supplemental jurisdiction over the complaint's state law claims;

4. The complaint's state law claims be dismissed without prejudice; and

5. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections.

////

////

////

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 28, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\horn0814.msj.f&rs